UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
                    v.                       :        **MEMORANDUM & ORDER**
                                             :        17-CR-131 (WFK)
Aaron Aguirre,                               :
                                             :
                         Defendant.          :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 28, 2018, Aaron Aguirre ("Defendant") pled guilty to Count One of an Indictment. Count One charges Defendant with distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 135 months of incarceration, 5 years of supervised release, restitution in the amount of $38,000.00, forfeiture as set forth in the Plea Agreement and the Order of Forfeiture, payment of a $100.00 special assessment, and payment of a $5,000.00 special assessment pursuant to the Victims of Trafficking Act. 18 U.S.C. § 1304.

## BACKGROUND

On March 13, 2017, the United States filed an Indictment charging Defendant with two counts of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). Indictment, ECF No. 9. On February 28, 2018, Defendant pled guilty to Count One of the Indictment. Plea Agreement, ECF No. 28. The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court

1

chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be 'a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a).'" *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (quoting *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006)). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II.  Analysis

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on April 23, 1983 in Glendale, California. Presentence Investigation Report ("PSR") ¶ 39, ECF No. 30. Defendant is the only child from the marital union of Eric Aguirre and Andrea (nee Parsons) Zmuda, who separated and divorced when Defendant was four years old. *Id.* ¶¶ 39-40. His father continues to reside in California with Defendant's three paternal half-siblings, while his mother lives in Brooklyn, New York with her current husband, Thomas Zmuda. *Id.*; *see also* Jan. 10, 2019 Letter ("Obj. Letter") at 2. Defendant advised he has a distant relationship with his father and a good relationship with both his mother and his stepfather, both of whom are aware of his conviction and remain very supportive. PSR ¶ 39.

2

According to Defendant, he was raised in a lower-income household in Pasadena, California, and his mother was addicted to marijuana, cocaine, and alcohol when he was a child, but she has been sober for the past twenty-five years. *Id.* ¶ 42. When his mother was using, Defendant advised she was neglectful and emotionally abusive toward him. *Id.* ¶ 43. Between the ages of four and eight years old, Defendant was sexually abused by his maternal grandfather and maternal uncle, who both also abused his same-aged cousin. *Id.* When he was twelve years old, Defendant reported the abuse to his mother, and she severed contact with that side of the family. *Id.* Defendant's mother confirmed in her telephone interview Defendant's history of sexual abuse by her family members. *Id.* ¶ 41. Defendant never received medical or psychological attention for this abuse. *Id.* ¶ 43.

Defendant left home to attend John Jay College of Criminal Justice in New York, New York when he was eighteen years old, and he has remained in the tri-state area ever since. *Id.* ¶ 42. In 2004, Defendant enrolled in LaGuardia Community College and became an Emergency Medical Technician. *See* May 24, 2019 Def. Sentencing Mem. ("Def. Mem.") at 2. Defendant married Samantha White on August 27, 2004 in Brooklyn, New York, and they divorced in 2009 as a result of "drift[ing] apart" and infidelity. PSR ¶ 44. In June 2012, Defendant commenced a romantic relationship with Amber Hayes, and they registered their domestic partnership on February 12, 2016. *Id.* ¶ 45. Defendant described the relationship as very good, and Ms. Hayes is fully aware of Defendant's conviction and has remained supportive. *Id.* During a telephone interview, Ms. Hayes described Defendant as very dedicated to his former job. *Id.* ¶ 46. She confirmed they maintained an "alternative sexual lifestyle" but stressed Defendant was not a pedophile. *Id.*

3

When Defendant was six years old, he was diagnosed with depression and Attention Deficit Hyperactivity Disorder ("ADHD") and prescribed Zoloft and Ritalin, respectively. *Id.* ¶ 55. At age 12, he was hospitalized for 72 hours in a psychiatric facility for violent outbursts. *Id.* He stopped taking medication at age 13 because it made him feel like a "zombie." *Id.* Defendant attended therapy on and off until he was 16, and then again from 2009 through 2010 to address his depressive symptoms and relationship issues. *Id.* ¶¶ 55, 57. Defendant attended mandated mental health treatment at The New York Center for Neuropsychology and Forensic Behavioral Science ("NY Forensic") in Brooklyn, New York. *Id.* ¶ 58. NY Forensic diagnosed Defendant with Adjustment Disorder with mixed depression and anxiety, Rule Out ("RO") Major Depression, and RO Generalized Anxiety Disorder. *Id.*

On June 17, 2017, Defendant, at the request of defense counsel, underwent a psychosexual evaluation at Mustardseed Forensic Licensed Clinical Social Work Services in Brooklyn, New York. *Id.* ¶ 59. Defendant self-reported he suffers from Empathetic Disassociation, and the clinician noted due to the amount of repeated trauma he experienced as a paramedic, and perhaps throughout his life, Defendant may be unable to empathize appropriately. *Id.* He attended weekly counseling services until his remand. *Id.*; *see also* Def. Mem., Ex. G.

Defendant has no prior convictions. *Id.* ¶¶ 32-36. Defendant advised during his intake evaluation with the NY Forensic that in 2012, he was reportedly arrested for domestic violence, which was pled down to disorderly conduct. *Id.* ¶ 37. This arrest does not appear in Defendant's National Crime Information Center search results. *Id.* Defendant has two orders of protection against him from 2012 and 2013, but they expired in 2014 and no victim information was listed

4

for either. *Id.* ¶ 49. While detained at the Metropolitan Detention Center, Defendant has incurred no disciplinary infractions. *Id.* ¶ 48.

With respect to the instant offense, on November 1, 2016, a Homeland Security Investigations undercover agent responded to an online advertisement entitled, "Looking for taboo chat." *Id.* ¶ 4. Between November 1 and November 2, 2016, the agent, who posed as the father of a five-year old female autistic child, communicated online with Defendant. *Id.* ¶ 5. Defendant expressed his sexual interest in the undercover agent's daughter, describing his willingness to also penetrate a two-year old with his penis "no matter how much she screamed." *Id.* Defendant also asked if the child was "verbal" and "would communicate." *Id.*

On November 2, 2016, Defendant gave the undercover agent a Gmail address to continue their communications and discuss his sexual interest in the undercover agent's daughter. *Id.* ¶¶ 6-7. On November 4, 2016, Defendant, using the Gmail address, sent an email to the undercover agent containing two files of child pornography. *Id.* ¶ 8. These files are described as: (1) an image of a prepubescent toddler's vagina; and (2) an image of a prepubescent vagina being presented by an adult hand that is pulling down her underwear. *Id.* Defendant sent the undercover agent an email on November 14, 2016 containing thirteen files, six of which clearly featured child pornography. *Id.* ¶ 9. Defendant sent another email on December 5, 2016 containing 114 video files, most of which clearly feature child pornography. *Id.* One file contained a video approximately 33 minutes and 30 seconds in length. *Id.*

Magistrate Judge Pollak issued a search warrant for Defendant's premises on February 13, 2017, which was executed on February 14, 2017. *Id.* ¶ 10. Defendant waived his *Miranda* rights and confirmed to agents he had used the Gmail address in question to send files containing child pornography. *Id.* Analysis of Defendant's electronic devices revealed 736 digital images

of child pornography, including images of infants/toddlers and images depicting bondage, bestiality, and sadomasochism. *Id.* ¶ 12. Twelve videos were found, with some longer in duration than five minutes. *Id.*

## B.    The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

"Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Defendant possessed a vast amount of child pornography that depicted toddlers and children being subjected to sexual abuse, and he actively shared and disseminated it. Further, Defendant expressed sexual interest in who he believed was the five-year-old autistic daughter of the undercover agent. His offense is therefore serious and warrants significant punishment.

The Court also finds there is a substantial need for deterrence, as a violation of the child pornography laws indirectly causes harm to society and, more importantly, directly to the actual victims depicted. These offenses, and offenses like them, contribute to the re-victimization of the most vulnerable members of society: children who have been videoed while being sexually abused by individuals who knew that a market exists for such images. *See, e.g., United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("Not only are children seriously harmed—

6

physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse."); *United States v. Johnson*, 221 F.3d 83, 98 (2d Cir. 2000) ("[D]issemination of child pornography is likely to expand the market for it and thus to cause more harm than mere possession." (citations omitted)); *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming sentence of 120 months of imprisonment for receipt, distribution, and possession of child pornography where district court had observed that "contrary to [the defendant's] contention, his crimes are not 'victimless' because they 'creat[e] a market' for child pornography and thus harm children, 'scarr[ing] [them] for life'").

The Court's sentence recognizes the seriousness of Defendant's offense and punishes him accordingly. It seeks to deter Defendant from further criminal activity. Finally, it also considers Defendant's personal history and the support of his family and friends.

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), for which he faces a statutory minimum term of imprisonment of five years and a maximum term of imprisonment of twenty years. 18 U.S.C. § 2252(b)(1). Defendant also faces: a minimum term of supervised release of five years and a maximum term of life, 18 U.S.C. § 3583(k); a maximum fine in the amount of $250,000.00, 18 U.S.C. § 3571(b)(3); restitution as set forth in paragraphs 12 through 16 of Defendant's Plea Agreement, 18 U.S.C. §§ 2259, 3663, and 3663A; a mandatory $5,000.00 special assessment pursuant to the Victims of Trafficking Act, 18 U.S.C. § 3014; and a mandatory $100.00 special assessment, 18 U.S.C. §

3013. Under the Plea Agreement, Defendant also faces criminal forfeiture. Plea Agreement ¶¶ 6-11. Defendant must comply with sex offender registration pursuant to the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 *et seq.*

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

All parties agree the applicable Guideline for violations of 18 U.S.C. § 2252(a)(2) provides a base offense level of 22. *See* United States Sentencing Commission, Guidelines Manual ("USSG") § 2G2.2(a)(2). Since the material involved photographs of minors under the age of 12, two levels are added. *Id.* § 2G2.2(b)(2). Four more levels are added because Defendant possessed images involving a prepubescent child, specifically toddlers, being vaginally and anally penetrated by an erect penis. *Id.* § 2G2.2(b)(4)(B). Two more levels are added because Defendant used a computer to transmit child pornography. *Id.* § 2G2.2(b)(6).

The parties dispute additional enhancements to Defendant's adjusted offense level. Probation argues because Defendant distributed child pornography in exchange for valuable consideration, but not for pecuniary gain, an additional five levels are added. *Id.* § 2G2.2(b)(3)(B). Since the offense involved the possession of at least 600 images of child pornography in Probation's view, the offense level is increased by five more levels. *Id.* § 2G2.2(b)(7)(D). Accordingly, Probation argues Defendant's adjusted offense level is 40.

Defense counsel and the Government argue Probation's Guidelines calculation contains two errors pertaining to enhancements. First, they claim a two-point increase under USSG § 2G2.2(b)(3) is appropriate, and not a five-point increase as Probation contends, because

8

Defendant knowingly engaged in distribution—not necessarily for valuable consideration. *See* Obj. Letter at 1; Gov't Sentencing Mem. ("Gov't Mem.") at 3, ECF No. 40 ("The government applied the lesser enhancement because it does not have sufficient evidence to establish that the defendant distributed child pornography to the undercover for the purpose of gaining access to the undercover's fictitious child."). Second, Defendant and the Government contend the application of USSG § 2G2.2(b)(7)(d) "incorrectly overstates the number of images by failing to consider multiple images of the exact same subject matter." Obj. Letter at 2; *see also* Gov't Mem. at 3 (noting the Government "did not count an image more than once if there were multiple copies of that image in the defendant's possession"). Defendant's and the Government's calculations—which are also reflected in the Plea Agreement—provide an adjusted offense level of 36.

Despite disagreements regarding Defendant's adjusted offense level, all parties agree Defendant has clearly demonstrated acceptance of responsibility for the offense, and the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. *Id.* § 3E1.1(b). Accordingly, Probation argues Defendant's total offense level is 37, which, with a criminal history category of I, yields an advisory Guidelines range of imprisonment of 210 to 262 months. USSG Ch. 5, Part A. However, because the statutorily authorized maximum sentence is 20 years, the restricted advisory guideline range is 210 to 240 months. USSG § 5G1.1(c)(1). Defendant and the Government argue Defendant's total offense level is 33, which yields an advisory Guidelines range of 135 to 168 months.

Probation recommends a sentence of 96 months of imprisonment, which is significantly below its calculated Guidelines range, followed by five years of supervised release with special

9

conditions. Probation Sentencing Recommendation at 1, ECF No. 30-1. Probation notes the statutory minimum in this case requires a significant sentence of five years, and its recommended sentence satisfies the goals of societal protection and deterrence. *Id.* at 4. Further, a term of supervised release is required, and Probation notes the sex-offender specific special conditions are necessary to ensure the continued rehabilitation of Defendant. *Id.*

The Government requests a sentence within its calculated Guidelines range of 135 to 168 months. Gov't Mem. at 2-3. Specifically, the Government contends a substantial sentence furthers Congress's interest in eliminating child pornography, as Defendant not only possessed child pornography but also "actively shared and disseminated it." *Id.* at 3. The Government also points to victim impact statements, written by identified victims whose images and videos were found on Defendant's computer, as further evidence "the consumption of child pornography is not a victimless crime." *Id.* at 4.

Defendant requests the Court depart from the Guidelines and sentence him to the five-year mandatory minimum. Def. Mem. at 3. Defendant argues he never physically touched a minor, and even though he expressed sexual interest in the undercover agent's five-year-old autistic child, "mere fantasy is not a punishable offense." *Id.* at 3. Defense counsel continues: "His admitted criminal conduct is inexcusable, but should be viewed in the context of the totality of his circumstances, including his previous law-abiding life, his outstanding public service[,] and[] his own severe sexual abuse as a child." *Id.* Defendant also requests the Court recommend he be placed at the Federal Medical Center in Devons, Massachusetts because it has a strong treatment program for patients with a history of viewing child pornography. *Id.* at 9.

The Court finds the appropriate total offense level for Defendant is 33, which, with a criminal history category of I, yields an advisory Guidelines range of imprisonment of between

135 and 168 months. The Guidelines further recommend a term of supervised release of five years to life, USSG § 5D1.2(b)(2) & n.1; a fine in the amount of between $35,000.00 and $250,000.00, *id.* § 5E1.2(c)(3); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is also ineligible for probation. *Id.* § 5B1.1 n.2.

### E.    Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5) relevant to Defendant's sentencing. Defendant seeks a below-Guidelines sentence, and although Defendant does not argue for a downward departure or variance under any specific policy statement issued by the Sentencing Commission, the Court addresses his arguments for a variance here.

Defendant urges the Court to exercise its discretion to order a non-Guidelines sentence of the five-year statutory minimum term of imprisonment because: (1) long-term incarceration would impose "extreme hardship" on his family; (2) he presents a low risk of recidivism because he is currently in therapy and counseling; and (3) he has a clear ability to lead a productive, law-abiding life. Def. Mem. at 1, 7-9. Defendant cites *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), and *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017) to contend sentences at or near the statutory maximum for violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) can be "manifestly unjust." Def. Mem. at 1, 7.

Following *Dorvee*, the Second Circuit has continued to uphold Guideline-range sentences for child pornography crimes, particularly when the sentence was not near the statutory maximum. *Compare United States v. Gill*, 739 F. App'x 75, 76-77 (2d Cir. 2018) (summary order) (affirming 121-month sentence for receipt of child pornography as substantively reasonable because unlike in *Dorvee*, "Gill's sentence was [not] 'near or exceeding the statutory

11

maximum'" (quoting *Dorvee*, 616 F.3d at 186)), *and United States v. Chow*, 441 F. App'x 44, 45-46 (2d Cir. 2011) (summary order) (affirming 84-month sentence for attempted receipt and possession of child pornography as substantively reasonable, despite *Dorvee* argument), *with Jenkins*, 854 F.3d at 185-89 (vacating 225-month sentence for possession and transportation of child pornography, 15 months below statutory maximum, as shockingly high, even though the Guidelines calculation resulted in a range above statutory maximum).

The Government does not respond directly to Defendant's variance arguments and instead recommends a Guideline-range sentence. In the PSR, Probation cites to *Dorvee* in pointing out the Second Circuit found Guideline § 2G2.2 to be "'fundamentally different'" and must be applied with great care to comport with the mandates of 18 U.S.C. § 3553. PSR ¶ 110 (citing *Dorvee*, 616 F.3d at 184). Although Probation does recommend a below-Guidelines sentence, it does not specifically consider *Dorvee* in its rationale. *See* Probation Sentencing Recommendation at 4. Probation also identifies two factors that may warrant an upward departure, although it advocates neither. *See* PSR ¶¶ 108-09.

F.    **The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

G.    **The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As set forth in the Plea Agreement, restitution is mandatory pursuant to 18 U.S.C. § 2259 in the full amount of the

victims' losses attributable to Defendant's activities. Plea Agreement ¶¶ 12-16; 18 U.S.C. §§ 2259, 3663A. The Government has requested a total of $38,000.00 in restitution, payable to six identified victims whose images and videos were found among the child pornography Defendant possessed on his computer. *See* June 12, 2019 Sealed Gov't Supplemental Submission ("Gov't Supplement"); Gov't Mem. at 1.

* * *

In defense counsel's submission to the Court dated May 24, 2019, defense counsel correctly notes the U.S. Court of Appeals vacated a judgment of the U.S. District Court, which had imposed a statutory maximum of 240 months for a defendant who pled guilty to one count of distribution of child pornography. *See Dorvee*, 616 F.3d 174. The *Dorvee* Court held such a sentence was substantively unreasonable because of that defendant's low risk of recidivism and because of the absence of any evidence the defendant was ever likely to sexually assault a child. *Id.* at 183-84.

This Court appreciates the dictate of *Dorvee* and therefore will not impose the statutory maximum of 240 months, nor will this Court impose the statutory maximum Guidelines imprisonment of 240 months calculated by Probation, nor will this Court impose the Guidelines maximum of 168 months as calculated by the Government and Defendant.

However, this Court rejects Defendant's request for a sentence of 60 months of imprisonment as vastly inadequate to address the crime committed in this case. This Defendant not only possessed hundreds of images and videos of child pornography, he actively and deliberately elected to share and to disseminate those images and videos. His actions caused the dissemination of child pornography that will likely expand the market and thus cause more harm than mere passive possession. *See United States v. Johnson*, 221 F.3d 83, 98 (2d Cir. 2000). As

13

the Seventh Circuit ruled in *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007), the case is most egregious where "young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded," both to consume for himself and to disseminate to others.

This Court also rejects Defendant's sentencing recommendation because a sampling of Defendant's child pornography collection was forwarded to the National Center for Missing and Exploited Children ("NCMEC") for identification of any victims known to law enforcement. As the PSR reports, that sampling enabled the NCMEC to identify thirteen known victims among the child pornography in the collection of Defendant. PSR ¶ 13. Three of those victims have provided victim impact statements, and the mother of three other victims has provided a victim impact statement. *See* Gov't Supplement. These statements make clear the consumption of child pornography was not a victimless crime in this case. These victims are painfully and fully aware that the images of the sex crimes committed against them have been and continue to be shared repeatedly over the internet.

Finally, Defendant, unlike the defendant in *Dorvee*, actually tried to abuse sexually a five-year-old autistic daughter—fortunately a fictitious five-year-old autistic daughter created under the lawful auspices of undercover police operations. The willingness of Defendant to engage in that conduct necessitates a sentence higher than the one he seeks in this case. After all, in *Dorvee*, the defendant did not state his desired willingness to penetrate a two-year-old child with his penis. The defendant in *Dorvee* did not state his desire to do so, and I quote, "no matter how much she screamed." The Defendant in this case did.

14

## CONCLUSION

A sentence of 135 months of incarceration, 5 years of supervised release, restitution in the amount of $38,000.00, forfeiture as set forth in the Plea Agreement and the Order of Forfeiture, payment of a $100.00 special assessment, and payment of a $5,000.00 special assessment pursuant to the Victims of Trafficking Act is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 30, and its addenda, ECF Nos. 34-35, barring any errors contained therein, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 18, 2019
       Brooklyn, New York